IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOSHUA HOUSLEY and ) <br> TRANSPORTATION INSURANCE ) <br> COMPANY as subrogee of Dixie ) <br> Pulp & Paper, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> LIFTONE, LLC., ) <br>  ) <br> Defendant. ) | Civil Action No. <br><br> 7:20-CV-00010-LSC |

**PLAINTIFFS' OPPOSITION TO DEFENDANT LIFTONE, LLC'S OPPOSED MOTION FOR SUMMARY JUDGMENT**

Plaintiffs opposes Defendant LiftOne, LLC's motion for summary judgment because there are clear issues of material fact with respect to causation and breach. Defendant's Motion should be denied in its entirety.

**I.  PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF FACTS**

Plaintiffs agree with Defendant's Statement of Facts, except as clarified below.

17.  *After checking with Hyster's Engineering Department, Courtney Ashcraft of LiftOne advised Housley that the heat shields should remain on lift truck 32. [Housley depo. P. 92, L12 – P., 114, L7; Ashcraft depo. P. 68, L1 – P. 70, L19; see also Exhibits B-6 and B-7].*

RESPONSE: LiftOne did not unequivocally and consistently instruct Dixie Pulp to leave the heat shields in place. While it is true that Mr. Ashcroft "strongly suggest[ed]" leaving the heat shields on, another LiftOne representative advised Dixie Pulp to *remove* the shields in order to properly blow out the engine compartment before use. Housley dep. 81:3–6, 107:10.[1]

27.     *The operator of the subject lift truck on the day of the accident, Taboris Blackmon, knew that the purpose of a heat was to prevent a fire and that he should report a missing heat shield. [Blackmon depo. P. 27, L4 – P. 29, L2].*

RESPONSE: Taboris Blackmon operated the subject lift truck on the day of the accident, was aware that the purpose of the shield was to prevent a fire, and that a missing heat shield was a problem. But ensuring that a heat shield is installed properly is not part of an operator's daily preshift checklist, which includes checking the oil/fluid levels, checking for damages, and blowing dust out of the engine. Housley dep. 28:8–15. Ensuring that the heat shields were installed correctly was the responsibility of LiftOne—and LiftOne did not reinstall the heat shield after the first fire took place. Housley dep. 83:11–84:8, 102:14.  Defendant has pointed to no evidence indicating that Mr. Blackmon or any other Dixie Pulp employee was aware that the heat shield was missing at the time of the fire.

---

[1] Excerpts from Joshua Housley's deposition transcript are attached as Exhibit 1.

31. *Between the time of the first and second fires, Mr. Housley did nothing to make sure the heat shields were on the manifolds of lift truck 32. [Housley depo. P. 84, L9-22; P. 111, L23 – P. 112, L3].*

RESPONSE: Mr. Housley did not personally inspect lift truck 32 to make sure the heat shield was in place. Pursuant to their maintenance agreement, Housley delegated responsibility for ensuring that lift truck 32 was repaired to a safe condition to LiftOne—and LiftOne has no record indicating that they reinstalled the heat shield. Housley dep. 76:3–10, Ashcraft dep. 138:18–23.[2] Dixie Pulp did not have any repairmen or mechanics trained to perform maintenance or repair on the lift trucks. Housley dep. 85:8.

## III. PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS[3]

1. Plaintiff's investigation revealed that the fire was caused by combustible materials coming into contact with the lift truck's headers (exhaust manifolds). Compl. ¶ 14.

2. Plaintiffs alleges this was possible because the heat shields had been removed during repairs performed by LiftOne, and never reinstalled. *Id.* ¶ 15.

3. In August of 2018, Plaintiffs retained John Neil of Unified Investigations and Sciences ("UIS") as an expert to opine on the cause and origins

---

[2] Excerpts from Courtney Ashcraft's deposition transcript are attached as Exhibit 2.
[3] In addition to the following facts, Plaintiff's incorporate by reference all of the stipulated facts contained in the parties' Joint Status Report [Doc. 19].

3

of the fire. *See* Smith Rpt., Ex. A, at 3.[4] Mr. Neil performed an initial fire scene examination, and participated in a multi-party examination and a laboratory examination of the lift truck and associated fire evidence. *Id.* Mr. Neil left his position at UIS in August of 2020. His caseload, including this matter, was transferred to Heath Smith of EFI Global.[5] *Id.* Mr. Smith reviewed the file and ultimately rendered an opinion on the fire's origins. *See generally id.* He concluded that the fire originated from the right side of the forklift engine and ultimately identified two potential sources of ignition: (1) electrical arcing, or (2) ignition of paper particles resulting from the missing heat shields. *Id.* at 2.

    4.    Mr. Smith consulted electrical engineer Perry A. Hopkins to offer his opinions as to whether the electrical arcing started the fire, or whether the fire caused the electrical arcing. *Id.* at 6.

    5.    Mr. Hopkins examined the electrical sources in August of 2020 and compared the damage to an exemplar machine. *See* Hopkins Rpt., at 2.[6] Based upon his inspection and observations, Mr. Hopkins opined that the electrical arcing was caused by the fire and not the other way around. *Id.* He provided an expert report to that effect in October of 2020. *See generally id.*

---

[4] Wesley "Heath" Smith's report is attached as Exhibit 3.
[5] UIS is now known as EFI Global.
[6] Perry Hopkins' report is attached as Exhibit 4.

6.      Both Plaintiffs' and Defendant's experts agree that the fire originated in the same part of the forklift engine.[7] The primary dispute in this case is whether the fire was caused by paper debris that accumulated where the exhaust manifold heat shields should have been as plaintiffs assert, or whether the cause is undetermined as indicated by defendant's expert.

## I.      STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating the absence of an issue of material fact. *Id.* at 323.

Once the moving party has done so, the burden shifts to the nonmoving party to demonstrate the existence a material fact. *Id.* at 324. The nonmoving party must "go beyond the pleadings" and point to specific factual issues that are material and in dispute. *Id.*  In determining what facts are in dispute, the Court must "view all of the evidence and draw all reasonable inferences in a light most favorable to the non-moving party."  *Caldwell v. Warden,* 748 F.3rd 1090, 1098 (11th Cir. 2014). Defendant's motion for summary judgment must be denied because there are clear, material, factual issues in dispute.

---

[7] The report of defendant's expert James McCann is attached as Exhibit 5.

5

## II. ARGUMENT

### A. Defendant Liftone Owed Both Contractual and Common Law Legal Duties to Plaintiffs

Negligence requires a showing of duty, breach, causation, and damages.[8] *Hilyer v. Fortier*, 227 So.3d 13, 22 (Ala. 2017). Breach of contract requires a showing of an enforceable contract, that there was a material breach by one of the parties to the contract, and that the breach resulted in damages. *Stockton v. CKPD Dev. Co.*, 936 So.2d 1065, 1078 (Ala. Civ. App. 2005). Because the duty in the negligence claim arises out of the contract at issue in the breach of contract claim, the common elements of breach and causation are discussed together.

LiftOne's "Full Maintenance Agreement," delegated all maintenance and service duties for the Dixie Pulp lift trucks to LiftOne personnel (with the exception of daily cleaning and routine preventive maintenance). The parties do not agree whether the repairs performed on the lift truck after the first fire were covered by the Agreement, but it is undisputed that LiftOne performed those repairs. Regardless of whether the repairs were performed under the Maintenance Agreement, or a separate repair contract, Liftone had the implied duty to perform the work of repairing the lift truck in a competent and workmanlike manner. *Nationwide Mut. Fire Ins. Co. v. David Grp., Inc.*, 294 So.3d 732, 735 (Ala. 2019). A failure to reinstall the heat

---

[8] Defendant has not argued that plaintiffs did not sustain damages from the fire at issue.

shields on the lift truck after removing them during the repair would be a clear breach of that duty. And LiftOne's failure to notice its mistake despite servicing the vehicle an additional sixteen times afterwards would be a clear breach of its implied duty under the Maintenance Agreement.

The same facts supporting breach of contract support Plaintiffs' claim for negligence. In Alabama, a breach of contractual duties supports a claim for negligence when a "defendant negligently performs his contract with knowledge that others are relying on proper performance and resulting harm is reasonably foreseeable." *Berkel & Co. Contractors, Inc. v. Providence Hospital*, 454 So.2d 496, 501 (Ala. 1984). Clearly, Dixie Pulp and its employees were relying upon defendant LiftOne to properly service and maintain Dixie Pulp's lift trucks, and it was foreseeable that Dixie Pulp and its employees could be harmed if Defendant negligently performed that work. Specifically, it was foreseeable that a fire could result if LiftOne did not re-install the "paper mill package" heat shields on the exhaust manifold of the lift truck that was being used in a paper handling facility. Defendant had both contractual and common law, tort based duties that it owed towards plaintiff.

**B.    There are Issues of Material Fact Related to Breach of Duty**

With respect to breach, Plaintiffs' evidence shows that Defendant's employee removed the heat shields during repairs and failed to put them back on. In fact, Mr.

7

Housley testified that the LiftOne repairman took a heat shield off and brought it to him in his office.

> Q: Okay. Did that lift truck have this foil, I'm going to call it, silver foil like we see in Defendant's Exhibit 1?
>
> A: On that day, I didn't—on that day, I wasn't even, you know, looking to notice if it had the foil or the wire mesh on it. I wasn't even, you know, looking to notice if it had the foil or the wire mesh on it. It wasn't until LiftOne come [sic] out and started making the repair, and *they removed the heat shield and brought it to me*. And it was the wire mesh type cover that was on it that they brought up to my office.

Housley Dep. 77:22–78:9 (emphasis added). Defendant's employee maintains that this did not happen. This is a clear dispute of material fact that may ultimately be resolved only by the factfinder. In the context of this motion for summary judgment the conflict must be resolved in plaintiff's favor. Therefore, the court must accept the testimony indicating LiftOne removed the heat shield from the lift truck's exhaust manifolds.

It is undisputed that both exhaust manifold heat shields were missing when the lift truck was inspected after the fire. It is a reasonable inference that LiftOne removed them after the first, small fire and never re-installed them. Clearly, a failure to reinstall necessary safety equipment would be a breach of LiftOne's contractual and common law duties.

LEGAL\51459468\1

C.     **There Are Genuine Issues of Material Fact Related to Causation**

The opinions of plaintiff's experts Wesley Heath Smith and Perry A. Hopkins unquestionably create an issue of material fact with respect to causation. Plaintiff adopts and incorporates herewith its Response to LiftOne's Motion to Exclude the Testimony and Reports of Plaintiff's Experts Heath Smith and Perry A. Hopkins. As explained therein, both of Plaintiff's experts clearly meet the requirements of *Daubert* and Defendants' Federal Rule of Evidence 702 for providing admissible expert testimony.

Mr. Smith's expert opinion is that the probable cause of the fire was due to the missing heat shields allowing paper dust to accumulate on the hot exhaust manifold and then ignite. *See generally* Smith Rpt. Mr. Hopkins' expert opinion is that electrical arcing found on the battery cable could reasonably be eliminated as a the cause of the fire, and was instead an effect of the fire. *See generally* Hopkins Rpt.

Of course, the trier fact is free to accept some, all, or none, of the opinions of Mr. Smith and Mr. Hopkins. However, in the context of this motion for summary judgment, the Court is not free to reject those opinions. Because the opinions of Mr. Smith and Mr. Hopkins create a genuine issue of fact regarding proximate causation, summary judgment is inappropriate.

9

Defendant argues that, even if its motion to exclude the testimony of Mr. Smith and Mr. Hopkins is denied, it is still entitled to summary judgment. *See* Def.'s Brf. at 15.  But that assertion is logically inconsistent. Clearly, if Plaintiffs' experts are allowed to testify, the Court has found that their testimony meets the requirements of *Daubert* and Rule 702—meaning that they are qualified, the testimony is reliable, and it would be helpful and relevant to the jury. And, if the Court so finds, it is a non sequitur to claim that the testimony of Plaintiffs' experts "is nothing more than mere speculation and conjecture."

Even if the testimony of Mr. Smith and Mr. Hopkins is excluded, plaintiffs have ample evidence to survive summary judgment.  The lift truck was equipped with a "paper mill package" because it was used in a paper handling facility.  The paper mill package consist of heat shields on the components of the lift truck's exhaust system, including the exhaust manifolds.  The sole purpose of the paper mill package is to protect against the fire hazard associated with paper dust and debris contacting the lift truck's hot exhaust system.  There is no dispute that the exhaust manifold shields were found missing after the fire.  Defendant's own expert, James McCann, admits that the fire could have been caused by "ignition of foreign materials or accumulated debris." *See* McCann Rpt. at 5.

The trier of fact could reasonably conclude that LiftOne negligently failed to reinstall the heat shields on the exhaust manifolds when it performed the previous

10

repair on the lift truck.  Further, given the circumstances, including the fact that the lift truck was operated in a paper handling facility, that the lift truck was equipped with a paper mill package, and that the exhaust manifold heat shields were missing at the time of the fire, and the findings of defendant's own expert, the trier of fact could also reasonably conclude that the fire was caused by the missing heat shields.

**D.      Plaintiffs Need Not Provide Expert Testimony to Establish the Standard of Care for a Lift Truck Mechanic Because The Act Constituting Breach of Care Is Within Lay Knowledge**

Defendant claims that it is entitled to summary judgment because Plaintiff does not have an expert to testify on the standard of care applicable to a LiftOne truck technician, citing *Jim Bishop Chevrolet-Buick-Pontiac-GMC, Inc. v. Burden*, 211 So.3d 794 (2016), for support. But *Burden* does not hold that expert testimony is *always required* to show the standard of care. Rather, *Burden* states that the Burdens' claim failed because they didn't "present any expert testimony, *or any evidence whatsoever*, of the appropriate standard of care." *Id.* at 802 (emphasis added).

Defendant's reliance upon *Watson, Watson Tuland/Architects, Inc. v. Montgomery Bd. Of Educ.*, 559 So.2d 168 (Ala. 1990) is similarly misplaced.  In *Watson*, a case involving a contractual dispute with an architect, the Court held that "in cases dealing with an alleged breach of duty by an attorney, doctor, or any other professional, *unless the breach is so obvious that any reasonable person would see*

11

*it*, then expert testimony is necessary in order to establish the alleged breach." *Id*. at 173 (emphasis added). The present case is exactly the type of case involving a breach "so obvious that any reasonable person would see it."

Perhaps the technical details of what a lift truck repair entails and how specifically it should be performed is beyond the understanding of the average juror. But whether a technician who removes safety equipment from a machine during a repair has a duty to put things back together correctly, with all required components in place, surely does not require expert testimony for the jury to understand.

Alabama courts have carved out exceptions for even negligence as complex as medical malpractice in cases "where want of skill or lack of care is so apparent . . . as to be understood by a layman, and requires only common knowledge and experience to understand it." *Anderson v. Ala. Research Laboratories*, 778 So.2d 806, 811 (Ala. 2000) (citing *Tuscaloosa Orthopedic Appliance Co. v. Wyatt*, 460 So.2d 156 (Ala. 1984)). It is not about the complexity of the profession—it is about how complex the act of negligence is.

> The need for expert testimony does not necessarily depend upon the type of profession which the defendant practices. Rather, it is dependent upon whether the average person is able to decide without expert testimony whether or not the procedure followed in any given case falls below the acceptable standard.

*Tuscaloosa Orthopedic*, 460 So.2d at 161.

LEGAL\51459468\1

As an example, an act of negligence by a doctor that does not require an expert to establish the standard of care is "where a foreign instrumentality is found in the plaintiff's body following surgery." *Holt v. Godsil*, 447 So.2d 191, 192 (Ala. 1982). Just like an errantly placed surgical instrument does not require expert testimony, a failure to reinstall required safety equipment can be understood by a layperson without the help of an expert. Accordingly, there is no need for Plaintiffs to provide expert testimony regarding the standard of care required of a lift truck technician.

**E.     Plaintiffs' Claims Are Not Barred Because Defendant Has Not, and Cannot, Establish Contributory Negligence As A Matter Of Law**

A defendant asserting contributory negligence has the burden of proving the plaintiff's negligence to the factfinder. *Knight v. Ala, Pwr. Co.,* 580 2d 576, 577-78 (Ala. 1991)   Specifically, a defendant has the burden of showing plaintiff (1) knew of the dangerous condition; (2) understood the danger of the surrounding circumstances; and (3) failed to exercise reasonable care by placing himself in the way of danger. *Id.*   To establish contributory negligence on summary judgment, the defendant must show that the plaintiff had a conscious appreciation of the danger posed by the visible condition at the moment the incident occurred." *Marquis v. Marquis,* 480 So.2d 1213, 1215 (Ala. 19850.   To "protect against the inappropriate use of summary judgment to establish contributory negligence as a matter of law," a defendant moving for summary judgment on such grounds must "establish by undisputed evidence a plaintiff's conscious appreciation of danger."   *Hannah v.*

13

*Gregg, Bland & Berry, Inc.*, 840 So.2d 839, 860-61 (Ala. 2002)). Defendant has quite plainly not met this burden.

While it is true that Mr. Housley was aware that there had been a previous small fire on the lift truck and that the heat shield had been removed in the course of repairs, he did not spend the nine months in between fires taking no action. Dixie Pulp did not have trained lift truck technicians and repairmen, but partnered with LiftOne to perform these duties. Mr. Housley corresponded with LiftOne about their responsibilities under the maintenance agreement, and specifically about the heat shields on the lift truck. He relied upon LiftOne to inspect and properly repair the lift truck following the first fire. Most importantly, there is no evidence whatsoever that Housley, truck operator Taboris Blackmon, or anyone else employed by Dixie Pulp, was aware that the heat shields had not been reinstalled at the time of the second fire.

To declare that Mr. Housley was negligent as a matter of law because he didn't visually inspect the lift truck to ensure that the heat shields were reinstalled is ridiculous. This is especially so in light of the fact that LiftOne promptly repaired the lift truck and *put the lift truck back into service*. Housley Dep. 76:7. Defendant has not pointed to *any* evidence showing that Plaintiffs knew that the heat shields were not in place prior to the fire—let alone that Plaintiffs "had a conscious

appreciation of the danger *at the moment the incident occurred.*" *Berry, Inc.,* 840 So.2d at 860-61.

Essentially, LiftOne's contributory negligence claim asks *quis custodiet ipsos custodies*?[9] It is no more than an attempt to impose a duty on Dixie Pulp to inspect the inspector—an inspector who, incidentally, inspected the lift truck *sixteen times* between the first and second fire without noticing the missing heat shields. Def.'s Brf. at 7, ¶24. Clearly, it is, at most, a jury question whether Dixie Pulp's employees, untrained in lift truck repairs, should have noticed that the heat shields were missing, particularly when Defendant's trained and experienced lift truck mechanic apparently didn't either.

## **CONCLUSION**

Defendant's motion for summary judgment is based almost entirely on the assumption that the Court will grant it's motion to exclude plaintiff's expert . If the opinions of Plaintiffs' experts are admitted, Defendant's motion for summary judgment collapses. However, even if plaintiff's experts are excluded, there is ample evidence defendants breach of duty and negligence.

This Court should deny Defendant's motion in its entirety.

---

[9] In English, "Who will guard the guards themselves," or "Who watches the watchmen?"

Respectfully submitted this 22nd day of March, 2021.

s/David M. Bessho
David M. Bessho (pro hac vice)
Cozen O'Connor
1230 Peachtree Street, NE, Suite 400
Atlanta, Georgia 30390
(404) 572-2046 (phone)
(877) 526-3074 (fax)
dbessho@cozen.com
*Attorney for Transportation Ins. Co.*

s/Justin L. Smith
Justin L. Smith
(ASB-4461-U82S)
Cross & Smith, LLC,
907 17th Avenue
Tuscaloosa, AL 35401
*Attorney for Joshua Housley*

John W. Scott (ASB-1788-T68J)
Scott, Dukes & Geisler, P.C.
211 Twenty-Second Street North
Birmingham, Alabama  35203
(205) 244-2501 (phone)
(205) 251-6773 (fax)
*Local Counsel- Transportation Ins. Co.*

LEGAL\51459468\1

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| JOSHUA HOUSLEY and TRANSPORTATION INSURANCE COMPANY as subrogee of Dixie Pulp & Paper,<br><br>                Plaintiffs,<br><br>v.<br><br>LIFTONE, LLC.,<br><br>                Defendant. | Civil Action No.<br><br>7:20-CV-00010-LSC |

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 22nd day of March, 2021, I electronically filed the foregoing using CM/ECF, which will send notification of such filing to:

C. Jeffrey Ash
Porterfield, Harper, Mills, Motlow & Ireland, P.A.
22 Iverness Center Parkway, Suite 600
Birmingham, AL  35242
cja@phm-law.com
*Attorney for Defendant*


                                            s/ David M. Bessho
                                            David M. Bessho
                                            Georgia Bar No. 055784