# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **JOSHUA HOUSLEY and** ) | |
| **TRANSPORTATION INSURANCE** ) | |
| **COMPANY, as subrogee of** ) | |
| **Dixie Pulp & Paper, Inc.,** ) | |
| ) | |
| Plaintiffs, ) | **CIVIL ACTION NO.:** |
| ) | **720-CV-00010-LSC** |
| v. ) | |
| ) | |
| **LIFTONE, LLC.,** ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT LIFTONE, LLC.'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE OPINION TESTIMONY AND REPORT OF JAMES MCCANN

COMES NOW the Defendant, designed as Liftone, LLC ("Liftone") and, in response to Plaintiffs' Motion to Exclude the testimony and report of its expert, James McCann, says as follows:

First, it should be noted that Plaintiffs do not question Mr. McCann's qualifications. As a professional engineer with almost forty years of experience, who graduated from Purdue University (generally recognized as one of the best engineering schools in the country), and having investigated over fifty to one-hundred fires per year during that time, including lift truck fires, he is clearly qualified. Instead, Plaintiffs use the first four pages of their brief to criticize the necessity of Mr. McCann conducting a second inspection of the subject lift truck.

1

This simply is not relevant. If Plaintiffs had some problem with Mr. McCann's second inspection, then they never should have agreed to it and could have even sought the Court's intervention in prohibiting it. Since they agreed to it, their criticism seems somewhat trivial. Plaintiffs argue that, since he performed a second inspection, Mr. McCann did a poor job in his initial inspection in failing to determine if the heat shields were missing. Mr. McCann acknowledges that they were missing, therefore, the purpose of this discussion, except to attack Mr. McCann, is unclear. Timing and context are very important here, when Mr. McCann initially inspected the lift truck, twenty-four days after the subject fire, suit had not been filed and there was no allegation that the lack of heat shields caused the fire. [McCann depo. P. 144, L9-L21]. He testified:

> Q. So when did you first confirm that this lift truck was supposed to have a paper mill package?
>
> A. Well, I was -- I mean, during my first inspection on August 30th, you know, I was observing heat wrap and shielding on all the exhaust components in the lower portion of the engine compartment. It's hard not to see they're there. I was examining how low the fire was. You know, 0underneath the vehicle you can see there was really no fire at that level underneath the vehicle, but you can see the heat wrapping on the exhaust component. You could also see it from up above. So I knew it was there and I knew fork trucks have that heat shielding for different applications.
>
> So I was aware of it. I just wasn't aware that there was an issue with some of it possibly missing. I never made a concerted effort to try to find the remains of the heat

2

> shielding that – from exhaust manifolds. There's no -- never found a reason to start searching for it until after it was revealed that that might be an allegation or it was an allegation.

This is in marked contrast to Plaintiffs' experts Mr. Smith and Mr. Hopkins who were not contacted by Plaintiffs' counsel until August 2020 [Smith depo P. 49, L22-P. 50, L9] and never inspected the lift truck until on or after August 14, 2020 [Smith report P. 3 of 7, Document 22-31, P. 4]**,** more than two years after the fire and more than seven months after Plaintiffs filed suit alleging that the lack of heat shields was its cause. Thus, one might conclude that in retaining these two experts, Plaintiffs were seeking witnesses who would support their previously filed allegations. At the least, their opinions are fraught with the kind of "confirmation bias" of which Plaintiffs complain. Even then, Mr. Smith's analysis, like Mr. McCann's, required two inspections (three counting the joint inspection with Mr. McCann) [Smith's report P. 3 of 7; Document 22-31 P. 4]. To accept Plaintiffs' suggestion would mean that Mr. McCann's data collection should have stopped at his initial inspection in August 2018. If this is true, then Plaintiffs' experts' entire testimony would be precluded, because they continued to collect data after their initial inspection on August 27, 2020 through the exemplar inspection on August 27, 2020 right up to Smith's joint inspection with Mr. McCann on September 21, 2020. [Smith report Doc. 22-31 p.5]. Nowhere do Plaintiffs cite any authority, NFPA 21 or otherwise,

that states an expert has but one bite at the apple and must collect all data on the first day of his investigation. Such a contention is preposterous. An expert should keep an open mind and continue to gather information as circumstances change. This is exactly what Mr. McCann did after it became evident that Plaintiffs' claims involved the missing heat shields.[1] Indeed, the only hard and fast deadline for Mr. McCann to finalize his opinion was the deadline contained in this Court's Scheduling Order for production of his report, a deadline with which he complied.

Conversely, Plaintiffs also complain that Mr. McCann failed to collect sufficient data before beginning his analysis and reaching his conclusions. In doing so, Plaintiffs misquote Mr. McCann's testimony at Page 75 of his deposition by stating that he concluded in March of 2019 that "the likely cause of the fire was an electrical fault on the battery cable." [Document 25-1 P. 3]. His actual testimony was:

> Q. Okay. What did you do after you spoke with those gentlemen and got the documents that Courtney sent you?
>
> A. Eventually we had a conference call with Jeff Ash and people at Travelers to discuss the case. Just discuss the difference between what I had talked to them about in March that it appears the fire was a result of a electrical fault and a battery cable. And now we have all this other information. We got to digest this and look at some of the stuff. That was basically it for a while. And eventually we got that opportunity to go look at the vehicle.

---

[1] As can be seen from the photographs taken by Plaintiff, prior investigator John Neel, it appears that the focus of his investigation centered around the propane tank and battery cable and not the absence of heat shields. [Smith report photographs 10-86 Pages 29-43 Document 22-32 and 22-33].

> Q. Okay. And that brings us to the September 21st, 17 2020, inspection mentioned in your report –
>
> A. Yes.

In truth, Mr. McCann has collected and reviewed the exact same data Plaintiffs' experts reviewed, in addition to their files, reports and depositions. McCann affidavit Exhibit H-2. In fact, he testified that he reached his opinion sometime between his initial inspection and when he was asked to provide a written report. [McCann depo. P. 71, L2-9]. A reading of Mr. McCann's testimony regarding his analysis reveals that it was at least as thorough as that of Plaintiff' 'experts. [McCann depo. P. 49, L10- P. 77, L17; P. 83 L14-P. 84, L8, P. 137, L4-P. 148, L24]. The fact he simply disagrees with their conclusions does not mean his opinion is unreliable.

Plaintiffs then attack Mr. McCann by pointing out that, although his report concludes the cause of the fire is undetermined, he also believes it was most likely caused by an electrical fault. However, his ultimate opinion in this case is the one expressed in his report, that due to a number of circumstances, including the extensive fire damage, the fire's cause is undetermined.

Plaintiffs then argue at great length that Mr. McCann committed, what appears in Plaintiffs' eyes to be the unpardonable sin, of not using the exact same verbiage employed by NFPA 921. As in their prior briefing, Plaintiffs make the mistake of

holding up NFPA 921 as the inflexible talismanic touchstone of fire investigation. However, as noted in *Travelers Indemnity Company of America v. Broan-Nuton*, 2008 WL 11381927 *5, (N.D. Ala. March 26, 2008), while that publication is "one particular reliable methodology for fire investigators" is not a "mandatory" standard. Therefore, an expert need not conform to every jot and tittle of it. In fact, as Plaintiffs concede in their brief in Response to LiftOne's Motion to Exclude Plaintiffs' Experts, that an expert need not even explicitly reference NFPA 921. [See Plaintiff's Response Document 24 p. 14]. Nevertheless, Plaintiffs spend most of the remainder of their brief arguing that Mr. McCann's testimony is unreliable because it is not couched in the specific tenets of NFPA 921. Again, this argument is irrelevant.

    The four cases cited by Plaintiffs regarding NFPA are inapplicable here. Only one of those cases, *United Fire and Casualty Company v. Whirlpool Corporation*; 704 F.3d 1338 (11th Cir. 2013), is binding precinct on this Court and it is distinguishable on its facts. In that case, as in two of the others cited, *Travelers Indemnity Company of America v. Broan-Nuton, LLC*. No. CV 05-B-1440-NE, 2008 WL 11381927 (N.D. Ala. March 2008) (unpublished) and *Ledbetter v. Blair Corporation*, No. 3:09-CV-843, 2012 WL 24640000, (M.D. Ala. June 27, 2012) (unpublished), the fire investigator's proffered testimony which was disallowed was as to the specific cause and/or origin. In contrast, Mr. McCann's testimony here is that, due to several factors, including the amount of fire damage, no specific cause

can be determined. The only case cited in which testimony that the cause of a fire was "undetermined," was excluded, is also distinguishable. *Watts v. Allstate Inc., Co.,* No 4:13-CV-0245, 2015 WL 13260397 *2 (N.D. Ga. Apr. 28, 2015). In that case involving a house fire, which the defendant insurance company apparently believed was arson, the Plaintiffs cause and origin investigator's opinion, that the cause was undetermined, was excluded. However, in that case, although the investigator conducted his initial investigation "immediately" after the fire, he did not retain any photographs, drawings, or notes from his investigation. In fact, his entire file was missing at the time of his deposition, some three and a half years later, at which time he could not even remember key facts, such as the layout of the house. *Id.* *3, 4 He also admitted that he had failed to inquire about, let alone to take into account, other factors important in an arson investigation such as litigation involving the property, Plaintiffs' bankruptcies, whether the Plaintiffs belongings were in the house at the time of the fire, whether the Plaintiffs had experienced previous fires, that the fire seemed to have multiple points of origin, and whether the Plaintiff had returned in the hours following the fire. Ultimately, the investigator even admitted that his opinions would not be helpful to anyone (including the jury). *Id.*

Such is not the case here, where Mr. McCann, personally inspected and photographed the subject lift truck twice, inspected the damaged battery cable, reviewed the photographs provided by Plaintiffs' experts and their reports, reviewed

7

depositions, basically considering the same evidence considered by the Plaintiffs' experts and applied basically the same methodology. In doing so, unlike Mr. Smith and Mr. Hopkins, he also considered the fact Mr. Blackmon had blown dust and paper out of the lift truck shortly before the fire; that the same lift truck had a fire nine months before; that twelve critical minutes of video showing the beginning of the fire are missing; and that paper dust and debris had not caused a fire between the first and second fires. After doing so, he simply reached a different conclusion from Mr. Smith's, i.e., that under the circumstances the cause is undetermined. Furthermore, Mr. McCann has significantly more education and significantly more experience in investigating fires of this type than Mr. Smith. For Plaintiffs to seek to exclude his testimony, which relies on the same evidence as their own experts, seems inconsistent.

Finally, Plaintiffs attempt to attack Mr. McCann by raising the totally unrelated case of *Howerton v. Red Ribbon, Inc.* 715 N.E. 2d 963, 967 (Ind. App. 1999). That twenty-two year old case did not even involve a fire, much less a fire in a forklift, but was about a grab bar in a motel bathtub. Plaintiff are truly grasping at straws to even raise that case because it is irrelevant to the issue here. Plaintiffs should simply admit that they wish to strike Mr. McCann's testimony because they do not agree with it. Such is not the purpose of *Daubert*. If this Court is inclined to disallow Mr. McCann's testimony under that standard, it should disallow that of

Plaintiffs' experts also, since their testimony is founded on the same evidence, but with far less meaningful analysis.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion to Exclude the Testimony and Report of James McCann should be denied.

Respectfully submitted,

*s/C. Jeffery Ash*
C. Jeffery Ash
(ASB-9502-A58C; ASH004)
Attorney for Defendant
Porterfield, Harper, Mills, Motlow & Ireland, P.A.
22 Inverness Center Parkway,
Suite 600
Telephone: (205) 980-5000
Email: cja@phm-law.com

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this, the 13th day of April 2021, I electronically filed the foregoing using Ala-file E-file, which will send notification of such filing to:

| | |
|---|---|
| Justin L. Smith<br>*Attorney for Joshua Housley*<br>Cross & Smith, LLC<br>907 17th Avenue<br>Tuscaloosa, AL 35401<br>justin@crossandsmith.com | John W. Scott<br>*Attorneys for Transportation Ins. Co.*<br>Scott Dukes & Geisler, PC<br>211   Twenty Second Street North<br>Birmingham, AL 35203<br>jscott@scottdukeslaw.com |
| Davis M. Bessho<br>*Attorney for Transportation Ins. Co.*<br>Cozen O'Connor<br>The Promenade, Suite 400<br>1230 Peachtree Street N.E.<br>Atlanta, GA 30309<br>dbessho@cozen.com | |

          */s C. Jeffery Ash*
          OF COUNSEL