FILED

2021 Sep-15  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| JOSHUA HOUSLEY and TRANSPORTATION INSURANCE COMPANY, as subrogee of Dixie Pulp & Paper, Inc., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | CIVIL ACTION NO.: 7:20-CV-00010-LSC |
| v. | ) ) | |
| LIFTONE, LLC., | ) | |
| Defendant. | | |

### MEMORANDUM OF OPINION

Before the Court are Plaintiffs' Joshua Housley ("Mr. Housley") and Transportation Insurance Company ("TIC") (collectively "Plaintiffs") motion to exclude expert testimony (doc. 25–1), Defendant LiftOne, LLC's ("LiftOne") motion to strike (doc. 26), Defendant LiftOne's motion to exclude expert testimony (doc. 20–1), and Defendant LiftOne's motion for summary judgment (doc. 21). The motions have been briefed and are ripe for review. For the reasons stated below, LiftOne's motion to exclude expert testimony and expert reports of Plaintiffs' experts Heath Smith and Perry A. Hopkins is due to be DENIED, Plaintiffs' motion

to exclude the expert testimony and report of James McCann is due to be DENIED

with leave to refile, LiftOne's motion to strike is due to be TERMINATED AS

MOOT, and LiftOne's motion for summary judgment is due to be DENIED.

## I.   BACKGROUND[1]

This case arises from the August 6, 2018, fire at the Dixie Pulp and Paper, Inc.,

("Dixie") facility in Tuscaloosa, Alabama. (doc. 1 at 2.) Plaintiffs Joshua Housley

and Transportation Insurance Company, Dixie's insurer, filed suit on January 3,

2020, alleging that LiftOne caused the fire. (doc. 1)

The 2018 fire originated in a 2014 Hyster lift truck leased by Dixie from

LiftOne for use in its paper plant. (doc. 1 at 2.) The subject lift truck was later

identified as lift truck 32. (doc. 21–1 at 3.) Before the 2018 fire, the subject lift truck

experienced a minor fire in late October or early November 2017. *Id.* At the time of

both fires, Dixie had a "Full Maintenance Agreement" in effect with LiftOne

---

[1]     The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .")

covering its fleet of lift trucks. (doc. 1 at 2.) Lift truck 32 was covered by the Full Maintenance Agreement. *Id.* Pursuant to the Full Maintenance Agreement, LiftOne was responsible for performing all periodic maintenance and service for Dixie's fleet of lift trucks, except for daily operator cleaning and preventive maintenance checks and services. (doc. 19 at 4.) Dixie Pulp had no trained lift truck technicians or repairmen. (doc. 22–1 at 24–25.)

The lift truck was manufactured by Hyster and supplied by LiftOne with a "paper mill package." *Id.* The paper mill package contains optional lift truck equipment designed for lift trucks used in paper manufacturing and handling facilities. (doc. 19 at 5.) The paper mill package includes the installation of thermal wrap on certain areas of the lift truck's engine, including the lift truck's headers, to protect against a potential fire hazard created by paper dust and debris accumulating around the hot engine. (doc. 1 at 3.) The paper mill package includes heat shields specifically for the engine exhaust manifolds. (doc. 19 at 5.). An inspection of the lift truck after the 2018 fire showed that the paper mill package heat shields for the engine exhaust manifolds were missing. *Id.* at 6.

After the 2017 fire, LiftOne repaired the subject lift truck and put the lift truck back into service. (doc 22–1 at 22.) During the months between the

October/November 2017 fire and August 6, 2018 fire, LiftOne serviced the subject lift truck sixteen times and failed to notice any missing heat shields each time. (doc 22–14 at 9–10.) Mr. Housley claims that a LiftOne employee removed the heat shields from the subject lift truck after the 2017 fire and brought one of them to his office. (doc. 22–1 at 23.) Mr. Housley also claims that it was Robby Gillis, LiftOne's employee, who removed the heat shields. *Id.* at 28-29. Mr. Gillis denies ever removing the heat shield. (doc. 22–22 at 22.)

In August of 2018, Plaintiffs retained John Neil of Unified Investigations and Sciences ("UIS") [2] as an expert to opine on the cause and origins of the fire. *See* Smith Rpt (doc. 24–1 at 3). Mr. Neil performed an initial fire scene examination and participated in a multi-party examination and a laboratory examination of the lift truck and associated fire evidence. *Id.* Mr. Neil left his position at UIS in August of 2020. His caseload, including this matter, was transferred to Heath Smith of EFI Global. *Id.*

Mr. Smith reviewed Mr. Neil's file, conducted his own independent investigation, and formed some hypotheses regarding the fire's origin and cause. *See generally id.* He concluded that the fire originated from the right side of the forklift

---

[2] UIS is now known as EFI Global.

engine and ultimately identified two potential sources of ignition: (1) electrical arcing at the cable providing power from the battery to the starter, or (2) ignition of paper particles by the exhaust manifold caused by the missing heat shields. *Id.* at 6.

Mr. Smith consulted electrical engineer Perry A. Hopkins to offer his opinions as to whether the electrical arcing started the fire, or whether the fire caused the electrical arcing. Mr. Hopkins also examined the lift truck and an exemplar in August of 2020 and conducted further research and analysis. (doc. 24–2 at 2–3.) Based upon his inspection and observations, Mr. Hopkins determined that the electrical arcing was caused by the fire, and not the other way around. *Id.* Mr. Hopkins provided an expert report to that effect in October of 2020. *Id.*

Defendant's expert James McCann was retained on August 17, 2018, to investigate the cause and origin of the fire. (doc. 22–43 at 14.) Mr. McCann inspected the subject lift truck about three weeks after the fire, on August 30, 2018. *Id.* at 21. During that inspection, Mr. McCann did not notice that the heat shields were missing. *Id.* Mr. McCann initially believed the cause of the fire was electrical arcing. *Id.* On September 21, 2020, Mr. McCann conducted a second investigation of the subject lift truck to confirm if the heat shields were missing. *Id.* at 19. On January 19, 2021, Mr. McCann provided a written report in which he concluded that the fire

originated at the right rear of the compartment and classified the cause of the fire as "undetermined." (doc. 22–44 at 8.) However, his report also stated that "the cause of the fire was most likely electrical in nature, involving the breakdown of the starter battery cable circuit." *Id.* Both Plaintiffs' and Defendant's experts agree that the fire originated in the same part of the forklift engine. (doc. 24–2 at 2–3; doc 24–3 at 5.) The primary dispute is whether the fire was caused by electrical arcing or whether the fire resulted from paper debris accumulating where the heat shield should have been.

## II.   STANDARDS OF REVIEW

### a.  MOTIONS TO STRIKE EXPERT TESTIMONY

While Federal Rules of Evidence 401 and 402 provide for the liberal admission of relevant evidence, Rules 403, 702, and 703 mitigate against this general policy by giving trial courts discretion to exclude unreliable or irrelevant expert testimony. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999). The Eleventh Circuit summarized the applicable rules in *City of Tuscaloosa v. Harcross Chem., Inc.*,  158 F.3d 548, 562 (11th Cir. 1998), when it wrote that scientific expert testimony may be admissible if "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by

which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *See also, e.g., Allison*, 184 F.3d at 1309; *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1312 (11th Cir. 2000).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court imposed a special duty on trial judges pursuant to Federal Rule of Evidence 702, requiring judges to act as "gate-keepers" to ensure that novel scientific evidence is both reliable and relevant before it is admitted. Later, in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court expanded its *Daubert* ruling. The Supreme Court recognized that judges are not trained scientists and that the task imposed by *Daubert* is difficult in light of their comparative lack of expertise. *Allison*, 184 F.3d at 1310 (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 148 (1997) (Breyer, J. concurring)). Nevertheless, the judge's relatively inexpert attention is preferable to "dumping a barrage of questionable scientific evidence on a jury." *Id*. While this Court is aware of its duty as a gatekeeper, it understands that its role is "not intended to supplant the adversary system or the role of the jury," *Id*. at 1311, and it recognizes that

"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The primary focus of a *Daubert* inquiry is on the principles and methodology underlying expert opinion testimony, not the conclusions they generate. *Id*. at 595. The trial court must be sure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. While experience alone may qualify an expert witness, it is not always enough. *See United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). "If the witness is relying solely or primarily on experience, then the witness must explain how the experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). Accordingly, "the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable." *Allison*, 184 F.3d at 1312; *see also Joiner*, 522 U.S. at 146 ("[C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But

nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Daubert*, 509 U.S. at 589–90 (Rule 702 requires that the subject of an expert's testimony must be "knowledge," which connotes more than a subjective belief or unsupported speculation).

*Daubert* also requires a special inquiry into relevance, calling on the trial court to ensure expert testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand). There must be a valid scientific connection between the testimony and the disputed facts in the case. *Id*. Furthermore, when expert opinion is based on otherwise inadmissible hearsay, Rule 703 requires the trial court to ensure the underlying facts or data upon which the expert bases his opinion or inference are of the type reasonably relied upon by experts in the particular field.

The testimony must assist the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical, or specialized expertise. *City of Tuscaloosa*, 158 F.3d at 562. The expert must contribute specialized knowledge not within the general understanding of the jury

nor anything the lawyers could argue to the jury themselves. *Cook ex. rel Estate of Tressier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005). Furthermore, the burden is on the party offering the expert testimony to affirmatively establish that their expert has suitable qualifications. *See*, *e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).

### b. SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[3] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but should determine whether there are any genuine

---

[3]     A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and a "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.   DISCUSSION

As a preliminary matter, the Court must address Defendant LiftOne's Motion to Exclude the Expert Testimony of Heath Smith and Perry A. Hopkins (doc. 20–1) as it will possibly be dispositive of Defendant LiftOne's motion for summary judgment (doc 21–1.)

### a.   DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY

LiftOne argues that the respective testimony of Mr. Smith and Mr. Hopkins does not meet the standard set forth by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993). Rule 702 provides that a:

> witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. For expert testimony to be considered reliable, "the reasoning or methodology underlying the testimony [must be] scientifically valid" and must be "properly . . . applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. Under *Daubert*, the Court's inquiry is flexible, but the focus "must be solely on principles and methodology, not on the conclusions that they generate." 509 U.S. at 594-595. When assessing the reliability of an expert's testimony, the Court should consider four factors: (1) whether the expert's theory can and has been tested, (2) whether the theory has been subject to peer review and publication, (3) whether the known or potential rate of error of the methodology is acceptable, and (4) whether the theory is generally accepted in the scientific community. *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 593–94).

(i)   **Mr. Smith's Testimony**

LiftOne argues that Mr. Smith's testimony should be excluded because he is not qualified, and because his methodology is not sufficiently reliable.

a.  **Mr. Smith's Qualifications**

As discussed below, Mr. Smith is qualified to testify as to the cause of the fire. He has over 13 years of experience in fire investigations, including specific experience with motor vehicle fires. (Doc. 24-4.) Mr. Smith holds numerous

certifications, including: Certified Fire Investigator, International Association of Arson Investigators; Certified Motor Vehicle Fire Investigator, International Association of Arson Investigators; Fire Inspector II, International Code Council; Fire Investigator, Alabama Fire College; and Firefighter II, Alabama Fire College. *Id.* at 2. He has worked as a firefighter, a fire chief, a fire investigator, and an assistant fire marshal. *Id.* Mr. Smith has well over 500 hours of tested training related to fires, including "Arc Mapping Basics," "Evidence Examination," "Explosion Dynamics," "Motor Vehicles: The Engine and Ignition, Electrical, and Fuel Systems," and "Investigating Motor Vehicle Fires" *Id.* at 2–4.

LiftOne argues that Mr. Smith's qualifications are lacking because he has only investigated one other fire in which a lift truck was involved. (doc. 28 at 2.) Yet, neither *Daubert* nor Rule 702 require any specific number of similar investigations for a witness to be considered an expert. Mr. Smith initially participated in fire investigation when he became a firefighter in 2005. (doc. 22–29 at 12.) The bulk of his fire investigation experience began in 2007, and he now has over 13 years of significant fire investigation experience. *Id.* at 11. Accordingly, Mr. Smith's qualifications are not lacking simply because he has only investigated one other fire

involving a lift truck.  Mr. Smith's 13 plus years of experience qualify him to testify on the cause of the fire in this case.

LiftOne also suggests that Mr. Smith is not qualified to offer testimony on this issue because this case involves an electrical issue and Mr. Smith is not an electrical engineer. (doc. 20–1 at 1.) Again, neither Rule 702 nor *Daubert* requires any specific credentials so long as the witness has the relevant knowledge and experience to offer expert opinions. The Eleventh Circuit has noted that experts may be qualified in various ways including scientific training, education, or experience in a field. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). And the plain language of Rule 702 also makes this clear: expert status may be based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Mr. Smith has extensive training on electrical issues as they pertain to fire investigations, in addition to having a certification in motor vehicle fires. (doc. 24–4.) The 13 years of training and practical experience that Mr. Smith has received throughout his career qualifies him to testify on the cause of the fire in this case.

### b.  Reliability of Mr. Smith's Methodology

Mr. Smith's methodology in reaching his conclusions is sufficiently reliable under *Daubert*. The National Fire Protection Association Publication 921, "Guide

for Fire and Explosion Investigations," ("NFPA 921") "is the industry standard for fire investigation." *United Fire and Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013). The NFPA 921 calls for the "scientific method" to be used in conducting these investigations. (doc. 24–7 at 3.) The scientific method is the required methodology under *Daubert. See, e.g.*, *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005). The steps of the scientific method as set out by the NFPA 921 are: (1) recognize the need (identify the problem), (2) define the problem, (3) collect data, (4) analyze the data, (5) develop hypotheses (inductive reasoning), and (6) select final hypothesis. NFPA 921 §§ 4.3.1–4.3.7 (doc 24–7 at 3–4.) Steps (3) through (5) can be repeated as needed until only one hypothesis remains and becomes the conclusion of the investigator. *Id.*

LiftOne argues that Mr. Smith did not follow the scientific method. (doc. 20–1 at 10.) However, this is contradicted by Mr. Smith's own testimony. As evidenced during his deposition, Mr. Smith recognized the need by identifying that there was a fire and defined the problem by conducting an origin and cause investigation. (doc. 22–29 at 41.) Then, he collected data by reviewing the previous fire investigator, Mr. Neil's documents, as well as examining the lift truck itself and an exemplar lift truck. *Id.* at 19. Mr. Smith also used data provided by Mr. Hopkins during his own

investigation. *Id.* at 41. After Mr. Smith analyzed the data, he developed two hypotheses—the fire might have been started due to electrical arcing or ignition of paper particles resulting from direct contact with the unprotected engine manifold. *Id.* at 41. To test these hypotheses, Mr. Smith followed the principle of deductive reasoning as required by NFPA 921 § 4.3.6. Mr. Smith compared the hypotheses to "all known facts as well as the body of scientific knowledge associated with the phenomena relevant to the specific incident." (doc. 22–29 at 41.) In short, Mr. Smith followed the scientific method exactly as it is laid out by NFPA 921. After following the scientific method, Mr. Smith concluded that the fire was caused by the ignition of paper particles resulting from direct contact with the unprotected engine manifold. (doc 22–31.)

LiftOne argues that Mr. Smith was required to use physical testing to confirm his hypothesis. (doc. 21–1 at 19.) Yet, such physical testing is not required by NFPA 921. Under NFPA 921, the investigator can test the hypothesis physically, analytically, or by referring to scientific research. NFPA 921 § 4.3.6. (doc 24–7 at 4.) Under the NFPA standard, Mr. Smith could have tested the hypothesis through any application of fundamental principles of science, physical experiments or testing, cognitive experiments, analytical techniques and tools, and systems analysis. NFPA

§ 19.6.4 (doc 24–7 at 6.) Cognitive testing, where "one sets up a premise and tests it against the data," is a valid means of testing a hypothesis. NFPA § 19.6.4.4 (doc 24–7 at 6.) Here, Mr. Smith used cognitive testing to reach his conclusion. Mr. Smith used data provided by Mr. Hopkin's investigation to eliminate the electrical arcing hypothesis. (doc. 22–29 at 41.) Thus, LiftOne's argument regarding the requirement of physical testing is incorrect.

LiftOne also argues that, because Mr. Smith does not know specific factual details, his testimony is not sufficiently reliable. (doc. 21–1 at 19.) Specifically, LiftOne argues that Mr. Smith does not know the amount of dust or the temperature inside the engine compartment on the day of the fire. *Id.* However, the admissibility of Mr. Smith's testimony does not hinge on whether this information is known. The Eleventh Circuit has stated that:

> It is true that relevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation. *Horton v. W.T. Grant Co.,* 537 F.2d 1215, 1218 (4th Cir.1976); *Calhoun v. Honda Motor Co., LTD.,* 738 F.2d 126, 132 (6th Cir.1984); *Polk v. Ford Motor Co.,* 529 F.2d 259, 271 (8th Cir.), *cert. denied* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976); Fed.R.Evid. 705. However, absolute certainty is not required. Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically. *See Breidor v. Sears, Roebuck and Co.,* 722 F.2d 1134, 1138 (3rd Cir.1983). *663 Whether this logical basis has been established is within the discretion of the trial judge and the

> weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. *Horton v. W.T. Grant Co., supra,* 537 F.2d at 1218; *Polk, supra,* 529 F.2d at 271; *Taenzler v. Burlington Northern,* 608 F.2d 796 (8th Cir.1979); *Wilder Enterprises, Inc. v. Allied Artists Pictures Corp.,* 632 F.2d 1135 (4th Cir.1980). On cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.

*Jones v. Otis Elevator Co.*, 861 F.2d 655, 662–63 (11th Cir. 1988). Therefore, Mr. Smith's testimony just needs to be connected logically to the conditions and evidence. As discussed above, Mr. Smith followed the scientific method. Mr. Smith collected data, formed hypotheses, cognitively tested them, and reached a logical conclusion based on this. (doc 22–29 at 41.). As a result, Mr. Smith had a logical basis for forming his opinion and any supposed shortcomings may be addressed by opposing counsel on cross-examination as they go to weight rather than admissibility. Accordingly, despite Mr. Smith's failure to know certain factual details, his testimony is still sufficiently reliable.

LiftOne also argues that Mr. Smith was wrong in relying on Mr. Hopkins' opinions. However, under Federal Rule of Evidence 702, Mr. Smith may base his testimony on Mr. Hopkins' opinions. The advisory committee notes to the Rule state that the 2000 amendment requires that "expert testimony be based on sufficient underlying 'facts or data.'" Fed. R. Evid. 702 advisory committee's note

to 2000 amendment. In the context of Rule 702, "data" can include the "reliable opinions of other experts." *Id.* As discussed below, Mr. Hopkins' opinions were reliable. Accordingly, Mr. Smith may rely on Mr. Hopkins' opinions in forming his conclusion under Rule 702 as they qualify as sufficient underlying facts or data.

LiftOne also argues that because Mr. Smith "disregarded the opinion of the Tuscaloosa Fire Department that the fire's cause was 'undetermined,'" his opinions are unreliable. (doc. 20-1 at 18.) In fact, Mr. Smith did consider the Tuscaloosa Fire Department's report and opinion. (doc 22–29 at 34.) However, Mr. Smith did not rely on that report and instead chose to conduct his own origin and cause investigation. *Id.* No legal authority has been cited by Defendant as to why Defendant believes Mr. Smith should have relied so heavily upon the Tuscaloosa Fire Department's report and opinion.

Mr. Smith followed the scientific method as appropriate for this case. Accordingly, his methodology is sufficiently reliable under *Daubert*.

### c. Assists the Trier of Fact

Mr. Smith's testimony assists the trier of fact in understanding the evidence or determining a fact in issue. As a fire investigator, Mr. Smith's testimony as to the origin and cause of the fire is clearly helpful to the trier of fact in this case, and

Defendant makes no claim to the contrary. Therefore, based on the Eleventh Circuit's framework from *Frazier*, Mr. Smith's testimony is admissible under Rule 702.

(ii)    **Mr. Hopkins' Testimony**

LiftOne primarily questions the reliability of Mr. Hopkins's methodology. However, the Court will address each aspect of the *Frazier* framework in turn.

### a.  Mr. Hopkins qualifications

As conceded by LiftOne, Mr. Hopkins is qualified to offer competent testimony on the matter of the electrical engineering issues in this case. (doc. 28 at 1.) Mr. Hopkins was not asked to conduct an origin and cause investigation, instead Mr. Smith consulted him about the electrical arcing hypothesis. As an electrical engineer, Mr. Hopkins is qualified to testify regarding this hypothesis. Mr. Hopkins has worked as an engineering consultant, a forensics electrical engineer, and as a compliance engineer. (doc. 24–5 at 2.)  He has over 18 years of experience with the investigation of electrical accidents, fires, and explosions. *Id.* Mr. Hopkins has over 10 years of experience in compliance testing for industrial equipment and motor-operated appliances. *Id.* He is a Certified Fire and Explosion Investigator through the National Association of Fire Investigators and he has considerable training hours

devoted to fire and electrical forensics. *Id.* at 2–6. Mr. Hopkins has nearly 600 hours of fire-related continuing education and has presented at numerous seminars on fire-investigation related topics. *Id.* The electrical arcing hypothesis fits squarely within Mr. Hopkin's area of expertise; therefore, he is qualified to offer competent testimony as to this hypothesis.

### b. Reliability of Mr. Hopkins Methodology

Mr. Hopkins was retained as an expert to test only one hypothesis. Mr. Hopkins' sole role was to conduct an electrical inspection of the propane-powered lift truck to determine if an electrical failure occurred in a way that could have caused the loss. (doc. 23–4 at 2.) Essentially, Mr. Hopkins was determining whether electrical arcing was a possible cause of the fire. (doc. 22–35 at 12.). Mr. Hopkins examined both the subject lift truck at issue in this case as well as an exemplar lift truck. *Id.* at 13–14. Mr. Hopkins also reviewed the service history of the subject lift truck and any recall documentation from the manufacturer of the subject lift truck. *Id.* at 13. These documents revealed that the battery cable had never been serviced or recalled. *Id.* at 22–23. Mr. Hopkins used this information, as well as other background information, to determine whether the electrical arcing caused the fire.

*See id.* Ultimately, Mr. Hopkins concluded that the fire was not caused by the electrical arc. *Id.* at 23.

LiftOne argues that Mr. Hopkins' conclusion was unreliable because it was based on inadmissible evidence. (doc. 20–1 at 15.)  LiftOne believes Mr. Hopkins determined that an arc in the battery cable did not cause the fire because no other arcs have occurred before. *Id.* LiftOne argues this is inadmissible evidence of the occurrence or non-occurrence of accidents. *Id.* However, the admissibility of this evidence is irrelevant. The Federal Rule of Evidence 703 allows an expert to rely on evidence that would not otherwise be admissible. Fed. R. Evid. 703. The requirement of Rule 703 is that the facts or data relied on must be of a type that experts in that field would "reasonably rely on." *Id.*; *see also Broussard v. Maples,* 535 Fed.Appx. 825, 828 (11th Cir.2013) (noting that Rule 703 of the Federal Rules of Evidence "allows an expert to base his opinion on facts or data that would otherwise be inadmissible, such as hearsay, if other 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion.'") (quoting Fed.R.Evid. 703).

Documents which detail service history and recall information relating to the electrical system of a vehicle or other item which experienced a fire would reasonably

be relied on by other experts in their examination of the vehicle or item.  Accordingly, it is reasonable for an electrical engineer, such as Mr. Hopkins, to rely on these documents. In fact, it would be arguably irresponsible and unprofessional to ignore these documents. Thus, LiftOne's argument that Mr. Hopkins methodology was unreliable due to his reliance on inadmissible evidence fails.

LiftOne also argues that Mr. Hopkins based his conclusion about the electrical arc hypothesis exclusively on the evidence of a lack of recalls and lack of problems in the battery cable. (doc. 20–1 at 15.) Yet, a careful reading of the record indicates otherwise. Mr. Hopkins' deposition shows that he did not base his conclusion solely on this evidence. Mr. Hopkins stated that the lack of an issue with similar battery cables causing fires was "one of the factors in [his] final conclusion." (doc. 22–35 at 23.) In addition to that evidence, Mr. Hopkins also relied on his education and experience, his examination of the subject and exemplar lift truck, his review of the subject truck's service history, and his review of the battery cable's recall history. *Id.* Simply put, Mr. Hopkins relied on a vast array of information to form his qualified expert opinion.

LiftOne also argues that Mr. Hopkins' conclusions are unreliable because he cannot eliminate the possibility that the battery cable had an inherent defect.

However, under NFPA 921, Mr. Hopkins is not required to definitively rule out every possibility before reaching a conclusion. NFPA 921 sets out the two most common levels of certainty: probable and possible. NFPA 921 § 4.5 (doc. 24–7 at 5.) Probable is used when a hypothesis is "more likely than not" or has a likelihood of greater than 50%, whereas possible is used when a hypothesis is "feasible" but does not rise to the level of probable. *Id.* Thus, an expert may have a probable cause, meaning one that has a likelihood of greater than 50%, while still acknowledging other possibilities remain that cannot be eliminated. Mr. Hopkins' final conclusion was made to "a reasonable degree of engineering certainty." (doc. 23–4.) On the other hand, the hypothesis of an inherent defect was a mere possibility. See (doc. 22–35 at 22.) Thus, Mr. Hopkins being unable to absolutely rule out the possibility that the electrical arc was the cause of the fire in no way detracts from the admissibility of his opinion that it probably was not.

LiftOne further argues that Mr. Hopkins opinions were unreliable because Mr. Hopkins failed to perform "microscopic or other scientific examination of the subject battery cable to determine if its properties are consistent with having arced and caused the fire or having arced as a result of it." (doc. 20–1 at 27.) However, as explained above, such physical testing is not required by NFPA 921 or the scientific

method. In fact, no physical test even exists to reliably distinguish between an electrical arc that was the cause of the fire and one that was the result of a fire. (doc. 24–8 at 3.) Mr. Hopkins followed the scientific method as appropriate for this case. Accordingly, his methodology is sufficiently reliable under *Daubert*.

### c. **Assists the Trier of Fact**

Finally, Mr. Hopkins' testimony also assists the trier of fact in understanding the evidence or determining a fact in issue. As an electrical engineer, Mr. Hopkins' testimony as to the electrical system of the lift truck and the electrical aspects of the fire is clearly helpful to the trier of fact in this case, and Defendant makes no claim to the contrary. Therefore, based on the Eleventh Circuit's framework from *Frazier*, Mr. Hopkins' testimony is admissible under Rule 702.

### b. Plaintiffs' Motion to Strike Expert Testimony

Plaintiffs filed a motion to exclude the expert testimony of James McCann, Defendant LiftOne's expert. (doc. 25.) LiftOne then filed a motion to strike Plaintiffs' motion to exclude expert testimony because it was filed after the dispositive motion deadline. (doc. 26.) Plaintiffs' motion to exclude expert testimony does not affect the granting or denial of summary judgment as Plaintiffs

still bear the burden of proving their case at trial. As Plaintiffs have admitted, the "[e]xclusion of Defendant's expert will not dispose of a single issue in the case." (doc. 29 at 2.) Accordingly, Plaintiffs' motion is due to be DENIED with leave to refile at a later time. As a result, LiftOne's motion to strike Plaintiffs' motion to exclude expert testimony is due to be TERMINATED AS MOOT.

### c. LiftOne's Motion for Summary Judgment

Plaintiffs have brought claims for negligence and breach of contract. Defendant LiftOne has moved for summary judgment on both claims.

### i. Negligence

To prevail on the negligence claim, Plaintiffs must prove: "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Hilyer v. Fortier*, 227 So.3d 13, 22 (Ala. 2017) (quoting *Lemley v. Wilson*, 178 So.3d 834, 841-42 (Ala. 2015)). LiftOne makes no arguments regarding the elements of duty or injury, instead resting its argument on breach and causation.

### 1. Breach

With respect to breach, LiftOne argues that Plaintiffs must have an expert designated to testify regarding the standard of care for maintenance work on complex products. (doc. 21–1 at 16.) LiftOne believes that since Plaintiffs have no such expert,

they have no evidence that LiftOne breached any standard of care, and summary judgment is appropriate. *Id.* LiftOne cites the case of *Jim Bishop Chevrolet-Buick-Pontiac-GMC, Inc. v. Burden* to support its proposition that expert testimony is always required to establish the standard of care for maintenance work on complex products. However, a close reading of *Burden* reveals no such requirement was created. In *Burden*, the Alabama Supreme Court quoted *Brooks v. Colonial Chevrolet-Buick, Inc.* which said:

> In order to present a prima facie case of negligent repair on Colonial's part, the Brookses had the burden of presenting substantial evidence that, taking into account all of the attendant circumstances, Colonial did something or failed to do something that would violate the proper standard of care one must observe in repairing a brake system. The Brookses presented no expert testimony; in fact, the Brookses presented no evidence whatever regarding the quality of the repair work performed by Colonial when it attempted to substantiate and to correct the problems the Brookses alleged they had experienced with the brakes.

*Burden*, 211 So.3d 794, 802 (Ala. 2016) (quoting *Brooks,* 579 So.2d 1328, 1334 (Ala. 1991)). The Alabama Supreme Court went on in *Burden* to find that the plaintiffs failed to present any expert testimony, or any evidence whatsoever, of the appropriate standard of care to be adhered to when a service department undertakes to diagnose the cause of such an intermittent burning odor. *Burden*, 211 So. 3d 794, 802 (Ala. 2016). As a result, the court held that denying defendant's motion for

judgment as a matter of law and submitting plaintiff's claims to the jury was erroneous. *Id.* at 804. Neither of the above cited cases creates any expert testimony requirement for the Plaintiffs at the summary judgment stage in this Court. Rather, *Burden* and *Brooks* stand for the proposition that some evidence of the standard of care must be presented to submit a claim to the jury.

Despite this requirement, Alabama courts have carved out exceptions for negligence cases even as complex as medical malpractice. Expert testimony is not required to establish breach in medical malpractice cases "where want of skill or lack of care is so apparent … as to be understood by a layman, and requires only common knowledge and experience to understand it." *Anderson v. Ala Research Lab'ys*, 778 So. 2d 806, 811 (Ala. 2000) (citing *Tuscaloosa Orthopedic Appliance Co. v. Wyatt*, 460 So.2d 156 (Ala. 1984)). In *Wyatt*, the Alabama Supreme Court noted that:

> The need for expert testimony does not necessarily depend upon the type of profession which the defendant practices. Rather, it is dependent upon whether the average person is able to decide without expert testimony whether or not the procedure followed in any given case falls below the acceptable standard.

*Wyatt*, 460 So. 2d at 161. Thus, the need for expert testimony is not about the complexity of the profession, but rather about how complex the act of negligence is.

Here, the alleged act of negligence is not so complex as to require expert testimony. Plaintiffs' negligence claim centers around the alleged failure of LiftOne to replace the thermal wrap on the subject lift truck. (doc. 1 at 5.) The technical details of what lift truck repair entails, how repairs should be performed, what parts are needed, and how long it should take are details where expert testimony might be required. However, whether a technician who has allegedly removed safety equipment from a machine during repairs has a duty to put things back together, with all parts in place, does not require expert testimony. A failure to replace equipment taken off during a repair is something "understood by a layman, and requires only common knowledge and experience to understand it." *Wyatt*, 460 So. 2d at 161. Therefore, this Courts finds that expert testimony is not required regarding the breach of the standard of care in this case.

Further, Plaintiffs have pointed to sufficient evidence to show that there is a genuine dispute of material fact as to breach. In his deposition, Mr. Housley testified that a LiftOne employee removed the heat shields from the subject lift truck after the 2017 fire and brought one of them to Mr. Housley's office. (doc. 22–1 at 23.) Mr. Housley also claims that it was Robby Gillis, LiftOne's employee, who removed the heat shields. *Id.* at 28-29. Mr. Gillis denies ever removing the heat shield. (doc. 22–

22 at 22.) Plaintiffs argue that this failure to reinstall the heat shields led to the fire. (doc. 1 at 5.) A reasonable factfinder could conclude that, if true, the failure to reinstall the heat shield, which was a necessary safety feature, constituted a breach of LiftOne's duty. Because LiftOne's employee maintains that these events did not occur, there is a question of fact as to breach which must be resolved by the finder of fact.

### 2. Causation

As for causation, LiftOne adopts and incorporates its motion to exclude Plaintiffs' experts. (doc. 21-1 at 15.) LiftOne argues that should this Court exclude the opinions of Mr. Smith and Mr. Hopkins; Plaintiffs cannot prove causation. *Id.* However, for the reasons mentioned above, Plaintiffs' expert testimony is admissible under Rule 702 as their methodology is sufficiently reliable under *Daubert*.

LiftOne also argues that even if Plaintiffs' expert testimony is admissible, that "Plaintiffs' still cannot prove negligence … as their testimony is not substantial evidence of causation but is nothing more than mere speculation and conjecture." *Id.* However, as discussed above, this Court recognizes that Plaintiffs' expert testimony meets the *Daubert* standard and has been shown to be more than mere speculation and conjecture. The opinions of Mr. Hopkins and Mr. Smith support

Plaintiffs' position that the fire was started due to the ignition of dust and debris on the lift truck's exhaust manifold resulting from missing heat shields. On the other hand, the opinion of LiftOne's expert, James McCann, is that the cause of the fire should be classified as undetermined. (doc. 23-5 at 8.) These dueling opinions are a prime example of a factual dispute which must ultimately be resolved by a fact finder. Accordingly, a genuine issue of material fact exists as to causation.

### 3. Contributory Negligence

LiftOne argues that Plaintiffs' claims of negligence are barred by the doctrine of contributory negligence. (doc. 21–1 at 16.) The question of contributory negligence is normally a question of fact and firmly in the realm of the jury. *See, e.g.*, *Cotton v. St. Bernard Preparatory Sch.*, 20 So. 3d 157, 163 (Ala. 2009); *Brown v. Piggly-Wiggly Stores*, 454 So.2d 1370, 1372 (Ala. 1984). However, where "the facts are such that all reasonable persons must reach the same conclusion, contributory negligence may be found as a matter of law." *Aplin v. Tew*, 839 So.2d 635, 638 (Ala. 2002). Contributory negligence is an affirmative defense, so LiftOne has the burden of establishing that "there is no genuine issue of material fact as to any element of that defense." *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1273-74 (11th Cir. 2006); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("Thus,

if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."). Specifically,  LiftOne has the burden of showing Plaintiffs (1) knew of the dangerous condition; (2) understood the danger of the surrounding circumstances; and (3) failed to exercise reasonable care by placing themselves in the way of danger. *Knight v. Ala. Pwr. Co.*, 580 So.2d 576, 577–78 (Ala. 1991). To find contributory negligence as a matter of law at the summary judgment stage, LiftOne must show that "the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So.2d 839, 860 (Ala. 2002).

LiftOne has not met its burden. LiftOne argues that Mr. Housley did not take steps for his own protection when he allegedly took no actions to ensure that the heat shields were on the subject lift truck for nine months. (doc. 21-1 at 19.) LiftOne relies on a line of negligent procurement of insurance cases to support the argument that Mr. Housley had a duty to take steps for his protection. *See Crook v. Allstate Indem. Co.,* 314 So. 3d 1188 (Ala. 2020) (citing *Alfa Life Ins. Corp. v. Colza*, 159 So. 3d 1240 (Ala. 2014); *Kanellis v. Pac. Indem. Co.*, 917 So. 2d 149 (Ala. Civ. App. 2005)). In

*Crook*, the plaintiff alleged that "he relied upon the defendants to provide adequate coverage for the property and that the defendants 'knew or should have known that [Coverage B] ... would be insufficient to cover damages to [the] deck and [the] boat [dock].'" *Crook*, 314 So. 3d at 1192. There, the Alabama Supreme Court affirmed the fact that an insureds' failure to read their insurance policy could lead to a finding of contributory negligence as a matter of law. *Id.* at 1202. However, *Crook* relied on the language of *Colza* to reach this conclusion which expressly stated:

> We do not think it unreasonable to conclude as a matter of law that, in this day and age, any adult of sound mind capable of executing a contract necessarily has a conscious appreciation of the risk associated with ignoring documents containing essential terms and conditions related to the transaction that is the subject of the contract.

*Colza*, 159 So. 3d at 1252. Therefore, the holding of these cases is not that a plaintiff's failure to take steps for their own protection automatically renders summary judgment appropriate. Rather, the holding is that a failure to read a contract before executing it is a conscious appreciation of the risk, which is an element that must be satisfied before contributory negligence is found as a matter of law.

Here, viewing the facts in the light most favorable to Plaintiffs, the non-moving party, a reasonable fact finder could determine that Mr. Housley did not have a "conscious appreciation of the danger at the moment the incident occurred."

*Berry, Inc.*, 840 So.2d at 860–61. Mr. Housley was aware that there had been a previous fire on the subject lift truck and that the heat shields had been removed during repairs. (doc. 22–1 at 22–23.) However, Dixie Pulp had no trained lift truck technicians and repairmen. *Id.* at 24–25. As a result, Dixie Pulp contracted with LiftOne to perform maintenance duties. (doc. 22–10 at 9.) After the 2017 fire, LiftOne repaired the subject lift truck and put the lift truck back into service. (doc 22–1 at 22.) During the months between the October/November 2017 fire and August 6, 2018 fire, LiftOne serviced the subject lift truck sixteen times and failed to notice the heat shields were missing each time. (doc 22–14 at 9–10.) No evidence has been presented that Mr. Housley, or anyone employed by Dixie Pulp, knew the heat shields were missing, of if noticed, appreciated the fire risk that was created. Accordingly, whether Mr. Housley is contributorily negligent is a jury question. Simply put, given the lack of evidence of any conscious disregard of risk by Mr. Housley and the disagreement over which party was obligated to ensure the heat shields were present, a genuine issue of material facts exists as to any contributory negligence by Plaintiffs.

The Court finds that questions of fact exist as to breach and causation. Further, the Court finds that LiftOne did not meet its burden as to contributory

negligence. Therefore, LiftOne's motion for summary judgment on Plaintiffs' negligence claim is due to be DENIED.

### ii.   Breach of Contract

To prevail on a breach of contract claim. A plaintiff must prove the existence of a contract, a material breach by one of the contracting parties, and damages as a result of that breach. *Stockton v. CKPD Dev. Co.*, 936 So.2d 1065, 1078 (Ala. Civ. App. 2005). Further, the plaintiff must establish a causal relation between the actual breach and damages. *Marshall Durbin Farms, Inc. v. Landers*, 470 So.2d 1098, 1102 (Ala. 1985). As in the negligence claim, LiftOne rests its arguments solely on breach and causation.

### 1.  Breach

With respect to breach, LiftOne again argues that Plaintiffs must have an expert designated to testify regarding breach of the standard of care for complex contracts. (doc. 21–1 at 16.) LiftOne relies *on Watson, Watson Tuland/Architects, Inc. v. Montgomery Bd. Of Educ.*, 559 So.2d 168 (Ala. 1990) to argue that expert testimony is required to prove breach of a contractual duty involving complex contracts. In *Watson*, a case involving a breach of contract claim against an architect, the Alabama Supreme Court held that "in cases dealing with an alleged breach of duty by an

attorney, doctor, or any other professional, unless the breach is so obvious that any reasonable person would see it, then expert testimony is necessary in order to establish the alleged breach." *Id.* at 173. LiftOne makes no argument that the alleged breach was by a professional. Assuming *arguendo* that LiftOne's services are performed by professionals, there is still no requirement of expert testimony in this case. As discussed above, whether a technician who has allegedly removed safety equipment from a machine during repairs has a duty to put things back together, with all parts in place, does not require expert testimony. A failure to replace equipment taken off during a contractually obligated repair is something "so obvious that any reasonable person would see it." *Id.* at 173. Therefore, this Courts finds that expert testimony is not required regarding the breach of a contractual duty in this case. Accordingly, a genuine issue of material fact exists as to breach.

## 2. Causation

With respect to causation, LiftOne again adopts and incorporates its motion to exclude Plaintiffs' experts. (doc. 21–1 at 15.) LiftOne argues that should this Court exclude the opinions of Mr. Smith and Mr. Hopkins; Plaintiffs cannot prove causation. *Id.* However, for the reasons mentioned above, Plaintiffs' expert

testimony is admissible under Rule 702 as their methodology is sufficiently reliable under *Daubert*.

LiftOne also argues that even if Plaintiffs' expert testimony is admissible, that "Plaintiffs' still cannot prove … breach of contract, as their testimony is not substantial evidence of causation but is nothing more than mere speculation and conjecture." *Id.* For the reasons mentioned above regarding causation, this argument is unpersuasive, and a genuine issue of material fact exists regarding causation.

The Court finds that questions of fact exist as to breach and causation. Therefore, LiftOne's motion for summary judgment on Plaintiffs' breach of contract claim is due to be DENIED.

## IV.    CONCLUSION

For the reasons stated above, LiftOne's motion to exclude expert testimony and expert reports of Plaintiffs' experts Heath Smith and Perry A. Hopkins is due to be DENIED, Plaintiffs' motion to exclude the expert testimony and report of James McCann is due to be DENIED with leave to refile, LiftOne's motion to strike is due to be TERMINATED AS MOOT, and LiftOne's motion for summary judgment is

due to be DENIED. An Order consistent with this Opinion will be entered

contemporaneously herewith.